UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                        NO. 3:25-CR-138-DPJ-ASH

ORVIN GIPSON

ORDER

Defendant Orvin Gipson filed a Motion to Reconsider [206] his detention order.  Though styled as a motion for reconsideration, the motion itself asserts an appeal from the magistrate judge's detention order and will be treated that way.  For the reasons stated below, the Court denies his motion.

I.        Facts and Procedural History

Gipson is one of 15 defendants charged with conspiring to distribute cocaine under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).  *See* Indictment [3] at 1–2.  On February 13, 2026, United States Magistrate Judge Andrew S. Harris conducted a detention hearing and found that bond should be denied.  *See* Feb. 13, 2026 Minute Entry.  A detention order [133] was entered a few days later.  On February 20, 2026, Gipson filed a motion to reconsider the detention order, *see* Mot. [164], which Judge Harris denied on April 8, 2026, *see* Order [204].  Gipson filed this motion to reconsider, asking "for a hearing before the District Court Judge, regarding the Magistrate's denial of bond . . . and all related orders entered prior or subsequently in the case."  Mot. [206] at 1.  The Government responded [212], and Gipson did not reply.  The time to reply has passed, so the motion is ripe.

II.     Standard of Review

Title 18 U.S.C. § 3145(b) states that "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  When such motions are filed, "the court acts de novo and makes an independent determination of the proper pretrial detention or conditions for release."  *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).  The district court is not required to conduct a new hearing.  *See United States v. Hensler*, 18 F.3d 936 (5th Cir. 1994) (unpublished but precedential under 5th Cir. R. 47.5.3).

Whether detention is proper falls under 18 U.S.C. § 3142(e)(1):

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

"[T]he lack of reasonable assurance of *either* the defendant's appearance or the safety of others or the community is sufficient; both are not required."  *Fortna*, 769 F.2d at 249.

"Under the Bail Reform Act, the existence of probable cause to believe that the defendant committed [a drug-trafficking offense] creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community."  *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (citing 18 U.S.C. § 3142(e)); *see also* 18 U.S.C. § 3142(e)(3)(A).  When the presumption arises, it "shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion."  *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).  But that evidence must be capable of rebutting the presumption.  *Rueben*, 974 F.2d at 586–87 (holding that defendants' evidence failed to meet their burden of production).

"If the presumption is rebutted, the court 'shall . . . take into account' four statutory factors [under § 3142(g)] to decide whether 'there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *United States v. Cabello*, No. 25-40482, 2025 WL 2738463, at *1 (5th Cir. Sept. 23, 2025) (per curiam) (quoting 18 U.S.C. § 3142(g)). That said, the presumption isn't a "'bursting bubble' that totally disappears from the judge's consideration after the defendant comes forward with evidence." *Hare*, 873 F.2d at 798. Courts may still rely on the policy considerations buttressing the presumption when weighing the factors under § 3142(g). *Id.* "The statute thus seems to create an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Id.* at 799.

III.    Analysis

A.    Presumption

Gipson's charge under the Controlled Substances Act triggers the rebuttable presumption. *See* 18 U.S.C. § 3142(e)(3)(A); Indictment [3] at 1–2; Gipson Notice [3-3]. He contends that he rebutted the presumptions because he (1) has worked at the same job for 12 years, (2) has door cameras at his house that probation officers could monitor, and (3) has been on bond for a state charge for two years "with no problems." Mot. [206] at 2; *see id.* at 1. Judge Harris found that Gipson rebutted the presumption. *See* Detention Order [133] at 2. The Court sees no reason to disturb that finding.

B.    Section 3142(g) Factors

Because the presumption has been rebutted, the Court turns to the § 3142(g) factors. *Cabello*, 2025 WL 2738463, at *1. Those include the nature of the offense, the weight of the

3

evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger. *See id.*

**Nature of Offense.** Gipson allegedly possessed with the intent to distribute large quantities of cocaine. The policy reasons for the presumption that attach to drug-trafficking offenses do not disappear at this stage. *See Hare*, 873 F.2d at 798. Congress obviously viewed this offense as serious, setting a 40-year maximum sentence. *See* Gipson Notice [3-3]. Accordingly, this factor weighs against Gipson's release since drug-trafficking is a serious offense with potentially lengthy imprisonment.

**Weight of the Evidence.** This factor "has been found 'to be of least importance in the detention determination.'" *United States v. Yusuf*, No. 4:19-CR-271-SDJ, 2020 WL 607105, at *5 (E.D. Tex. Feb. 7, 2020) (quoting *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex.), *aff'd*, 341 F. App'x 979 (5th Cir. 2009)). It nevertheless weighs against Gipson. According to the Government, Gipson attempted to evade law enforcement in a high-speed chase, during which he allegedly discarded a package containing two pounds of cocaine. *See* Gov't Resp. [212] at 4. Gipson has not disputed that allegation. Without a suggestion otherwise, the evidence "appears to be strong" as to Gipson's alleged role in the drug-trafficking scheme. *United States v. Corral*, No. 3:25-CR-445-E(3), 2016 WL 657598, at *11 (N.D. Tex. Mar. 9, 2026). For these reasons, this factor weighs against Gipson.

**History and Characteristics.** Gipson's history and characteristics weigh against him. The Bail Reform Act includes a host of characteristics a court should consider, including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . .

18 U.S.C. § 3142(g)(3)(A)–(B).

Consistent with those factors, Gipson emphasizes his 12 years of employment with the City of Jackson. *See* Mot. [206] at 1. He also highlights his compliance with probation requirements for two years. *See id.* at 2. Those facts weigh in his favor, but they are counterbalanced by other things documented in his pretrial services report (PSR).

To start, Gipson has a lengthy criminal record. *See* PSR [131] at 5–12. Among others, his convictions include carrying a concealed weapon, DUI, and three drug convictions (one in this Court). *See id.* The federal conviction followed a series of instances when Gipson was found with drugs over several months. *Id.* at 5–8. First, a search of his home in December 2004 uncovered drugs and multiple firearms. *Id.* at 6–7. A month later, he was stopped by law enforcement, was again found in possession of drugs, and resisted arrest. *Id.* at 10. Gipson yelled, "I can't go back to jail," and began taunting officers to kill him. *Id.* Subsequent searches found more drugs, *id.*, and a similar incident occurred three months after that with more drugs found, *id.* at 12. If convicted here, it would be his fourth drug-related conviction.

Additionally, Gipson has a "history relating to drug or alcohol abuse." 18 U.S.C. § 3142(g)(3)(A). According to the PSR, when arrested in this case he tested positive for marijuana. *See* PSR [131] at 5. He also claims to have received drug treatment 15 years ago. *See id.* Weighing both the good and the bad, the Court finds this factor weighs against release.

***Nature and Seriousness of the Danger.*** Lastly, Gipson "has engaged in conduct that endangers the community, and he remains a danger to the community." *United States v. Mixon*, No. 4:23-CR-274, 2025 WL 242836, at *7 (E.D. Tex. Jan. 17, 2025). Gipson has a criminal

history consisting of multiple drug crimes, a DUI, firearms, and driving infractions spanning nearly three decades. *See* PSR [131] at 5–12. When combined with his ongoing use of illicit drugs and the presumption that drug traffickers have a propensity for dangerousness, the Court finds the Government has met its burden. *See Mixon*, 2025 WL 242836, at *7. The Court finds this factor also weighs against release.

In sum, the Court has considered Gipson's evidence and his offer to let probation officers watch his door camera. But that does not outweigh these other factors. Even assuming the probation office could watch the cameras continuously, there is no way they would know what Gipson and others were bringing into his home. And there is strong evidence of drug trafficking at that address, indeed he has not challenged the allegation that he tried to discard two pounds of cocaine while fleeing. *See* Gov't Resp. [212] at 4. Finally, although he was compliant while on bond with Hinds County, that was before his arrest for these additional federal charges.

Because the Court finds all § 3142(g) factors weigh against release, the Government has met the applicable burdens to show that no condition or combination of conditions of release will reasonably assure safety of others and the community or Gipson's appearance as required. The Court therefore denies his motion to reconsider Judge Harris's detention order.

IV.    Conclusion

The Court has conducted a de novo review and considered all arguments. Those not specifically addressed would not have altered the result. For the reasons stated above, the Court denies Gipson's motion [206] and orders that he remain in custody.

**SO ORDERED AND ADJUDGED** this the 23rd day of July, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

6